IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| TENA CLARK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1:24-cv-312 |
| ) | JURY DEMAND |
| MEIGS COUNTY, TENNESSEE and ) | |
| CASEY STOKES in his individual ) | |
| capacity as Meigs County General | |
| Sessions Judge, | |
| | |
| Defendants. | |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS**

**INTRODUCTION**

Contrary to Defendant Casey Stokes' ("Judge Stokes") argument, Plaintiff's claim is not baseless. Rule 8 of the Federal Rules of Civil Procedure requires only that Plaintiff state "simply, concisely, and directly events that, [she] allege[s], entitles [her]to damages" and other relief she seeks. Johnson v. City of Shelby, 135 S. Ct. 346, 347 (2014). Plaintiff adheres to the path set forth in Section 1983 to sue for prospective relief against state judge in her Complaint. Judge Stokes is correct that this Court previously held that judicial immunity shielded Judge Stokes' egregious conduct in Ashbrook v. Meigs County, Tennessee, et. al., Case No. 1:24-cv-165, 2025 U.S. Dist. LEXIS 31371 (U.S. District Court for the E. Dist. Tenn. May 29,2025). [Doc. 26 #122] Judge Stokes is incorrect is representing Plaintiff's case to this Court as a "companion case." [Doc. 26 #122] Not all of a Judge's decisions are bulletproof because of

1

judicial immunity. As alleged in the Complaint, there are no immunity defenses applicable to Plaintiff's claims against Judge Stokes.

The central issue at stake in the Court's resolution of Judge Stokes' motion to dismiss in this case is whether Judge Stokes can be held accountable for his blatant affront to Plaintiff's Fourth, Sixth, Eighth and Fourteenth Amendment rights. Under a system committed to the rule of law and checks and balances as two of its fundamental ideals, the answer is clear: any reasonable judge—indeed, any reasonable person—would have known that Plaintiff's arrest and incarceration for summary contempt at a security checkpoint was flagrantly unconstitutional. Judge Stokes ignores the well-pleaded allegations of Plaintiff's Complaint and seeks dismissal based not on the facts as alleged but on Judge Stokes' own version of events. [Doc. 26, #123]

There is no deficiency in Plaintiff's Complaint. Judge Stokes' motion to dismiss is, in large part, a recitation of legal standards and bare conclusions. Judge Stokes has done little to engage with the facts that Plaintiff alleged or analyze the constitutional claims that Plaintiff asserts in her Complaint. Judge Stokes' motion to dismiss should be denied.

## LEGAL STANDARD

In reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008)). A court may not dismiss a complaint merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007). The pleading standard "'does not impose a probability requirement at the pleading stage," but instead requires only that the complaint "state a claim to

relief that is plausible on its face." " Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556, 570 (2007). The court must deny a motion to dismiss "if, in view of what is alleged, it can reasonably be conceived that the plaintiffs . . . could, upon a trial, establish a case which would entitle them to . . . relief." Twombly, 550 U.S. at 563 n.8 (2007).

## ARGUMENT

### A. Judicial Immunity Is Not a Defense to Plaintiff's Claims

This is the rare case in which a Section 1983 cause of action is the best redress for the harm that Plaintiff suffered as a result of Judge Stokes' egregious actions. Respectfully, Judge Stokes failed to meet his burden that he had at least "some subject matter jurisdiction over the underlying legal action[ ]" in this case. See Cooper v. Parrish, 203 F.3d 937, 946 (6th Cir. 2000).

It is undisputed that Plaintiff's son was immediately arrested upon reaching the security checkpoint in the Meigs County Courthouse on February 8, 2024. [Doc.1 #3, Doc. 26 #123] It is further undisputed that a casually-dressed Judge Stokes put a finger in Plaintiff's face and told her to "shut up" at the security checkpoint without identifying himself to her as a judge or otherwise holding any proceeding that resembled a judicial one when Plaintiff explained to law enforcement she held a power of attorney for her son. [Doc. 1 #3, Doc. 26 #123] Plaintiff found herself cuffed and incarcerated for summary contempt at the security checkpoint at Judge Stokes' directive on February 8, 2024 without ever stepping foot in the General Sessions Court of Meigs County, Tennessee or interrupting any court proceedings. Security officers took Plaintiff into custody at Judge Stokes' directive saying, "when the Judge tells you to shut up, you need to shut up." [Doc. 1 #6]

This Court has stated "[w]hen evaluating the jurisdiction exception, courts must consider the judge's power to hear a particular case and the full scope of the judge's statutory authority.

Ashbrook v. Meigs County, No: 1:24-cv-165, 2025 U.S. Dist. LEXIS 31371 (E.D. Tenn. February 21, 2025) citing Marchant v. Moore, No: 3:09-cv-1218, 2010 U.S. Dist. LEXIS 102622 at *2 (M.D. Tenn. Sept. 28, 2010). Judge Stokes sentenced Plaintiff for engaging in criminal contempt during proceedings of the General Sessions Court for Meigs County, Tennessee. [Doc. 26 #122] Judge Stokes does not identify the judicial proceedings taking place at the security checkpoint on February 8, 2024. Although Plaintiff and her son believed they were late, they were neither on the court's docket nor tied to any scheduled judicial proceeding that day. Judge Stokes describes the Plaintiff's confusion at the security checkpoint when law enforcement immediately arrested her son as a "verbal altercation" when Plaintiff merely asked, "what's happening." (Clark Depo. P, 27) Judge Stokes approached Plaintiff at the security checkpoint loudly telling her to "shut up." (Clark Depo. P. 27). Plaintiff, confused and clearly not realizing Judge Stokes' role, interpreted the command as a question and began to retrieve her power of attorney paperwork. (Clark Depo., P, 42) Judge Stokes then used the sheriff's spot in the courthouse, the security checkpoint, to conduct summary contempt proceedings against Plaintiff. Judge Stokes may have control of his courtroom, but he provides no authority which supports conducting judicial hearings at courthouse security checkpoints *sua sponte*. Plaintiff was not charged with interfering with her son's arrest. T.C.A. § 39-16-602. Law enforcement took Plaintiff into custody for failing to follow the casually-dressed Judge Stokes' directive to "shut up" at the security checkpoint without ever identifying himself to Plaintiff as a judge.

Judge Stokes alleges his judicial authority entitled him to place Plaintiff in criminal contempt because the alleged conduct occurred "either inside or outside his courtroom." [Doc. 26 #127] Courthouses, including Defendant Meigs County, have security measures in place to protect judges, staff, and the public, such as metal detectors at security checkpoints. See T.C.A. §

16-2-505(d). The metal detectors are outside the courtroom doors in the Meigs County Courthouse. (Clark Depo. P. 26). It is the sheriff, not Judge Stokes, who oversees courthouse security. See T.C.A. § 5-7-108(a); T.C.A. § 5-7-108(a)(2). Performing security duties such as checking the purses and pockets of those entering the courtroom are not a judicial function. See T.C.A. § 16-15-406. ([j]udges of the courts of general sessions shall adopt such rules as may be necessary to expedite the trial and disposal of cases.") The County Court Security Commission develops rules for security for a county courthouse, not the general sessions court judge. See T.C.A. § 16-2-505(d). Judge Stokes could not find the sheriff or any of the sheriff's staff guilty of contempt solely for following and implementing rules reasonably related to the security of the courthouse adopted by the County Court Security Committee. See State v. Beeler, 387 S.W.3d 511 (Tenn. 2012); Reed v. Hamilton, 39 S.W.3d 115, 117-18 (Tenn. Ct. App. 2000) (both stating that a Tennessee court's contempt authority is limited in that courts may only punish as contemptuous the types of acts described by T.C.A. § 29-9-102). Judge Stokes lacked power to hear a summary contempt proceeding at the security checkpoint.

The scope of Judge Stokes' summary contempt power are entirely statutory. T.C.A. § 29-9-102; See also, Scott v. State, 71 S.W. 824 (1902); State v. Beeler 387 S.W.3d 511 (Tenn. 2012). The common nexus of all the statutory contempt categories is willfulness. State ex rel Paula Flowers v. Tennessee Trucking Association Self Insurance Group Trust, 209 S.W.3d 602, 612 (Tenn. App. 2006) ("willfulness" in the context of criminal contempt is different from "willfulness" in the context of civil contempt); State v. Smith, No. E2009-00202-CCA-R3-CD, 2010 Tenn. Crim. App. LEXIS 1061 (Tenn. Ct. App. Dec. 17, 2010)(the term "willfulness" in criminal contempt means an act voluntarily and intentionally done and with the specific intent to do something the law forbids.) In the absence of proof that behavior is willful, then there can be no conviction for either civil or criminal contempt. Black v.

5

Blount, 938 S.W.2d 394 (Tenn. 1996). Being confused at a security checkpoint is not one of those statutory reasons punishable by contempt. See T.C. A, § 29-9-102. Further, confusion does not equate to willfulness. Judge Stokes' inherent power to protect the dignity of his proceedings is "not a license for unwarranted flexing of judicial power" and should only be exercised when "reasonable and necessary." See Anderson County Quarterly Court v. Judges of the 28th Judicial Circuit, 579 S.W.2d 875, 878-79 (Tenn. Ct. App. 1978); See also State v. Reid, 981 S.W.2d 166, 170 (Tenn. 1998). There is no allegation that Plaintiff or her son actually appeared in Judge Stokes' courtroom or involved themselves in Judge Stokes' performance of his judicial responsibilities in any way on February 8, 2024. Judge Stokes took it upon himself to interfere with the security officers' performance of their responsibilities, first by trying to intimidate Plaintiff into silence by yelling "shut up" and then holding her in summary contempt causing her to be incarcerated. The purpose of summary contempt procedures in Tennessee has been described as follows:

> It is a mode of vindicating the majesty of law, in its active manifestation, against obstruction and outrage. The power thus entrusted to a judge is wholly unrelated to his personal sensibilities, be they tender or rugged. But judges also are human, and may, in a human way, quite unwittingly identify offense to self with obstruction to law.

State v. Cowan, No. E2000-02705-CCA-R3-CD, 2001 Tenn. Crim. App. LEXIS 780 (September 24, 2001) at *12.

Plaintiff had no idea that Judge Stokes was a judicial officer when he approached her, yelling at her to "shut up." Bad went to worse when Plaintiff found herself handcuffed and incarcerated for being confused about her son's immediate arrest at the security checkpoint. Tennessee courts have found examples of direct contemptible conduct to include:

- "disrespectful, unreasonable or contemptuous conduct in the presence of the court," State v. Jones, 726 S.W.2d 515, 519 (Tenn. 1987),
- "clamorous and violent language" in the presence of the court, Harwell v. State, 78 Tenn. 544, 546 (1882), and
- "turbulent conduct" in the presence of the court, or so near thereto, as to interrupt the proceedings, Harwell v. State, 78 Tenn. 544, 546 (1882)

6

See also, In re Hickey, 149 Tenn. 344, 258 S.W. 417, 425 (Tenn. 1923).

Here, Judge Stokes was present at the security checkpoint which was placed *outside* his courtroom. No judicial proceedings were taking place. Asking questions to security officers at a security checkpoint is not an unusual event in a courthouse. See State v. Frye, No. E2019-00686-CCA-R3-CD, 2021 Tenn. Crim. App. LEXIS 221 at *22 (May 17, 2021) Judge Stokes' highly aberrational treatment of conducting a summary contempt proceeding at the security checkpoint simultaneously with an arrest exceeds his statutory authority precluding a finding of judicial immunity. See Stump v. Sparkman, 35 U.S. 349 (1978).

B. **Even If Judicial Immunity Applies, It Only Would Immunize "Judicial Acts"**

Because judicial immunity does not apply, the Court need not inquire into whether the charged acts are "judicial" or "non-judicial" in character. However, even if the doctrine of judicial immunity truly applied, it would not help Judge Stokes. As alleged in Plaintiff's Complaint, Judge Stokes went well beyond his official role when he endeavored to assist law enforcement officers at the security checkpoint at the Meigs County Courthouse. Judge Stokes was not acting in a judicial capacity when he approached Plaintiff yelling at her to "shut up" at the security checkpoint.

As this Court previously stated "[d]rawing the line between judicial and nonjudicial acts can be difficult." Ashbrook v. Meigs County, No: 1:24-cv-165, 2025 U.S. Dist. LEXIS 31371 (E.D. Tenn. February 21, 2025) citing Forrester v. White, 484 U.S. 219, 227 (1988). Courts should (1) "look to whether the action is one normally performed by a judge" and (2)" 'the expectations of the parties,' including whether they were dealing with the judge in his judicial capacity" to determine if an act is judicial or nonjudicial. Ashbrook v. Meigs County, No: 1:24-cv-165, 2025 U.S. Dist. LEXIS 31371 (E.D. Tenn. February 21, 2025) citing Stump v.

7

Sparkman, 435 U.S. 349, 362 (1978). Assisting law enforcement at courthouse security checkpoints are not functions ordinarily performed by a judge. See T.C.A. § 8-8-201(a)(2)(A); T.C.A. § 5-7-108(a)(2). It is the sheriff, not the judge, who is in charge of courthouse security. See T.C.A. § 5-7-108(a); T.C.A. § 5-7-108(a)(2) and § 8-8-201(a)(2)(A).

As this case demonstrates, some actions taken by judges are not judicial acts. See, e.g., Forrester v. White, 484 U.S. 219, 220 (1988) (a state-court judge's decision to dismiss a subordinate court employee); Id. at 227 (a state-court judge's performance of "administrative, legislative, or executive functions"); Id. at 229 (a 16 state-court judge's acts in "supervising court employees" or "overseeing the efficient operation of a court"). Endeavoring to control Plaintiff's conduct at a security checkpoint where the sheriff had every right to enforce the law—is not "a function normally performed by a [state court] judge." See Stump v. Sparkman, 435 U.S. 349, 362 (1978).

Civil judicial immunity exists to protect the "adjudicative function." See Forrester v. White, 484 U.S. at 226-227 (1988). Traditional "adjudicative functions" include such things as weighing evidence, making factual findings, reaching legal determinations, choosing sanctions, and expounding reasons for decisions. Heyne v. Metro. Nashville Bd. of Pub. Educ., 380 S.W.3d 715,735 (Tenn. 2012)(the separation of investigative, prosecutorial, and adjudicative functions is a hallmark of criminal proceedings). Judicial acts also include entering judgment, Pope v. United States, 323 U.S. 1, 12 (1944); imposing or altering a sentence, United States v. Benz, 282 U.S. 304, 310 (1931); and issuing a search warrant, Buckley v. Fitzsimmons, 509 U.S. 259, 271 (1993). Judge Stokes' invocation of judicial immunity bears no relation to the "adjudicative function." The immediate arrest of Plaintiff's son at the security checkpoint was not connected to Judge Stokes' scheduled proceedings on February 8, 2024. The conversation at the security

checkpoint cannot be considered a bond hearing because Plaintiff's son was incarcerated on February 8, 2024 without an evidentiary hearing. State v. Burgins, 464 S.W.3d 298 (Tenn. 2015). Plaintiff's confused dialogue with law enforcement about the events surrounding her son's arrest cannot be considered a hearing. A reasonable person would not expect to be before the court at a security checkpoint no more than they would expect to be on an airplane after entering security. Respectfully, Judge Stokes violated Plaintiff's Fourth, Sixth, Eighth and Fourteenth Amendment rights by incarcerating her for summary contempt at the security checkpoint.

Section 1983 provides a cause of action against people acting under color of state law who have violated rights guaranteed by the Constitution. See Torres v. Madrid, 592 U.S. 306 (2021); 42 U. S. C. §1983. Both the Fourth and the Fourteenth Amendments of the U.S. Constitution were designed to protect citizens against the abuse of power exercised by Judge Stokes. Plaintiff agrees with Judge Stokes that "it is the nature of the decision which matters, not whether it was right or wrong." [Doc. 26 #128] Judge Stokes lacked authority at the security checkpoint to conduct summary contempt proceedings and, in sentencing Plaintiff to incarceration, violated Plaintiff's constitutional rights. The fact that Judge Stokes is a judge does not mean that Plaintiff loses the right to bring the legal claim that 42 U.S.C.§ 1983 affords her. For now, the only facts that matter are those that Plaintiff has alleged, considered in the light most favorable to her, and those facts properly allege a cause of action under 42 U.S.C.§ 1983.

## CONCLUSION

For the foregoing reasons, Judge Stokes' motion to dismiss should be denied.

**Respectfully submitted,**

**TENA CLARK,**
**Plaintiff, by her attorneys,**

9

CHANCEY- KANAVOS


BY:  : /s/ H. Franklin Chancey
      G. SCOTT KANAVOS, BPR #013192
      H. FRANKLIN CHANCEY, BPR#013187
      Attorneys for Plaintiff
      P.O. Box 42
      Cleveland, TN 37364-0042
      (423) 479-9186
      scott@cklplaw.com
      franklin@cklplaw.com