| | |
|---|---|
| TENA CLARK, ) | |
| ) | |
|    *Plaintiff*, ) | |
| ) | 1:24-cv-312 |
| v. ) | |
| ) | Judge Curtis L. Collier |
| MEIGS COUNTY, TENNESSEE, *et al.*, ) | Magistrate Judge Michael J. Dumitru |
| ) | |
|    *Defendants*. ) | |
| ) | |

# M E M O R A N D U M

Before the Court is a motion to dismiss filed by Defendant Casey Stokes ("Defendant"). (Doc. 25.) Plaintiff has responded (Doc. 29) and Defendant has replied. (Doc. 30).

## I.    BACKGROUND[1]

On or about February 8, 2024, Plaintiff accompanied her son to the Meigs County Courthouse for a hearing in a matter in which her son was a named party. (Doc. 1 ¶¶ 14, 22.) Her son had previously suffered a traumatic brain injury and Plaintiff had power of attorney for her son. (*Id.* ¶ 21.) Plaintiff was not a litigant before Defendant, nor had she ever been. (Doc. 1 ¶ 16.) Plaintiff represents that neither she nor her son were "on the court's docket nor tied to any scheduled judicial proceeding that day."[2] (Doc. 29 at 4.)

---

[1] The Court, in considering this motion to dismiss, accepts all the factual allegations in Plaintiff's complaint as true. *See Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007) ("When ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint.").

[2] Plaintiff states she and her son came to the courthouse in anticipation of a hearing but also states none was scheduled. Reading this in the light most favorable to Plaintiff, the Court infers that such a hearing may have been initially scheduled but then moved to a different day or cancelled.

1

At around 9:15 a.m., Plaintiff passed through the metal detectors in the hallway on the second floor of the Meigs County Courthouse. (Doc. 1 ¶ 23; Doc. 26-3 at 3.) After she went through the metal detectors, a "large, bald man" rushed past her toward her son. (Doc. 1 ¶ 23.) As her son was still attempting to empty his pockets before passing through the metal detector, officers started putting him in handcuffs. (*Id.* ¶ 25.) While advising the officers that she had the power of attorney and after attempting to retrieve the document from her bag, the large bald man told Plaintiff to "shut up" and instructed officers to arrest Plaintiff. (*Id.* ¶ 28.) The large, bald man was Defendant. (*Id.* ¶ 48.) Defendant was wearing "street clothes" and had no identification "which would have put Plaintiff on notice that he was a judge." (*Id.* ¶ 29.) Plaintiff asked the officer, "why are you doing this?" and the officer responded, "when the Judge tells you to shut up, you need to shut up." (*Id.* ¶ 33.) The officers led Plaintiff to a locked room where she was left alone in handcuffs. (*Id.* ¶ 39.) At no time did Plaintiff raise her voice or use any profane or threatening language (*id.* ¶ 51), create a hazardous or physically offensive condition (*id.* ¶ 20), refuse to obey any orders from a police officer or any court official (*id.* ¶ 19), or engage in any annoying, violent, or threatening behavior (*id.* ¶ 18).

Defendant then entered a judgment that Plaintiff was in criminal contempt and ordered that she be incarcerated for ten days. (*Id.* ¶ 53.) She was transported to jail where she was held for hours before she was booked. (*Id.* ¶ 54.) Plaintiff was incarcerated in Meigs Couty Jail and released at approximately 3:00 p.m. the following day after a thirty-hour detention. (*Id.* ¶ 68.)

The Criminal Contempt Order entered against Plaintiff by Defendant and filed in the General Sessions Court of Meigs County, Tennessee bears docket number 23-OP-1626. (*Id.* ¶ 60) But the case bearing that docket number does not refer to Plaintiff as a party nor any proceeding that had taken place; rather, it refers to a case between Plaintiff's son and the mother of his children.

(*Id.* ¶ 59.) The booking report refers to civil contempt, not criminal contempt as stated in the Order. (*Id.* ¶ 61.)

Plaintiff filed suit on September 13, 2024. (Doc. 1.) She argues that Defendant, "out of personal animus, acted as a law enforcement officer rather than a judge." (*Id.* ¶ 79.) She alleges that she was arrested without probable cause and that Defendant was acting "with a complete lack of jurisdiction to issue such an order." (*Id.*) She alleges she was denied due process (*id.* ¶ 75), unlawfully seized (*id.* ¶ 124), subjected to excessive force (*id.* ¶ 140), and denied the right to notice and counsel (*id.* ¶ 171, 173). She also brings two state law claims. (*id.* at 28–29.) Defendant has filed a motion to dismiss on the basis of judicial immunity. (Doc. 25.)

## II. STANDARD OF REVIEW

A defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). As a preliminary matter, Rule 12(b)(6) motions "must be made before pleading if a responsive pleading is allowed." *Id.* Defendant filed the present motion (Doc. 25) after filing his answer to the complaint (Doc. 14). Therefore, Defendant's motion to dismiss is untimely.

Courts in this circuit frequently construe untimely motions under Rule 12(b)(6) as motions for judgment on the pleadings under Rule 12(c). Fed. R. Civ. P. 12(c); *Nat'l Bankers Trust Corp. v. Peak Logistics* LLC, No. 12-2268, 2013 U.S. Dist. LEXIS 84409, at *9–10 (W.D. Tenn. June 17, 2013) ("Ordinarily, when presented with a motion to dismiss asserting a failure to state a claim after filing an answer properly preserving such a defense, the Court will construe the motion to dismiss as one for judgment on the pleadings under Rule 12(c)."). While such a construction is not mandatory, the Court will construe this untimely motion to dismiss as one for judgment on the pleadings. "The standard of review for judgment on the pleadings under Rule 12(c) is

indistinguishable from the standard of review for motions to dismiss based on Rule 12(b)(6)." *Huisjack v. Medco Health Sols., Inc.*, 496 F. Supp. 2d 859, 861–62 (S.D. Ohio 2007); *see also Boulger v. Woods*, 917 F.3d 471, 477 (6th Cir. 2019).

In ruling on a motion to dismiss under Rule 12(b)(6), a court must accept all the factual allegations in the complaint as true and construe the complaint in the light most favorable to the plaintiff. *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (quoting *Hill v. Blue Cross & Blue Shield of Mich.*, 49 F.3d 710, 716 (6th Cir. 2005)). The court is not, however, bound to accept as true bare assertions of legal conclusions. *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

A court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although a complaint need only contain a "short and plain statement of the claim showing that the pleader is entitled to relief," *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)), the complaint must nevertheless contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Plausibility "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

"Because absolute immunity is an affirmative defense for which the defendants bear the burden of proof, dismissal on this basis is appropriate only if 'the undisputed facts conclusively establish the affirmative defense as a matter of law.'" *Reguli v. Hetzel*, No. 3:24-cv-541, 2024 U.S. Dist. LEXIS 203026, at 22–23 (M.D. Tenn. Nov. 7, 2024) (quoting *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 613 (6th Cir. 2009)). While "a plaintiff is generally not required to negate an affirmative defense in a complaint . . . the validity of such defenses may be apparent from the face

of the complaint, rendering a motion to dismiss appropriate." *Crawford v. Tilley*, 15 F.4th 752, 763 (6th Cir. 2021).

Rule 12(d) provides that "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). The Court of Appeals for the Sixth Circuit has taken a "liberal view" of matters falling within the pleadings for purposes of Rule 12(b)(6). *Armengau v. Cline*, 7 F. App'x 336, 344 (6th Cir. 2001). "If extrinsic materials merely 'fill in the contours and details' of a complaint, they add nothing new and may be considered without converting the motion to one for summary judgment." *Id*. (quoting *Yeary v. Goodwill Indus.-Knoxville, Inc.*, 107 F.3d 443, 445 (6th Cir. 1997). Here, the Court will not consider the attached depositions because they do not fill in the contours of the pleading but rather go beyond them into proving the truth of the allegations. *See Yisrael v. City of Pontiac*, No. 09-13718, 2012 U.S. Dist. LEXIS 44917, at *7 (E.D. Mich. Mar. 30, 2012) ("The Court will not consider the depositions because they clearly contradict facts alleged in the Amended Complaint.")

### III. DISCUSSION

Defendant argues that even if Plaintiff's allegations are true, her claims are barred by the doctrine of judicial immunity. (Doc. 26 at 7.) To prevail on a motion to dismiss, it must be clear from the face of the complaint that Defendant was engaging in a judicial activity. *Crawford*, 15 F.4th at 763 (6th Cir. 2021). Here, it is not.

"Judicial officers generally are absolutely immune from civil suits for monetary damages under § 1983 for their judicial actions." *Cooper v. Parrish*, 203 F.3d 937, 944 (6th Cir. 2000) (citing *Mireles v. Waco*, 502 U.S. 9, 9–10 (1991) (per curiam)); *see also Leech v. DeWeese*, 689 F.3d 538, 542 (6th Cir. 2012) ("It is well-established that judges enjoy judicial immunity from

5

suits arising out of the performance of their judicial functions.") (quoting *Brookings v. Clunk*, 389 F.3d 614, 617 (6th Cir. 2004)). "While this doctrine may seem unfair to an individual litigant seeking to vindicate his or her rights against a judge, it ultimately protects the public at large because there is 'a long-settled understanding that the independent and impartial exercise of judgment vital to the judiciary might be impaired by exposure to potential damages liability.'" *Orta v. Repp*, No. 3:22-cv-00359, 2022 U.S. Dist. LEXIS 224633, at *6 (N.D. Ohio Dec. 13, 2022), *aff'd*. No. 23-3034, 2023 U.S. App. LEXIS 23388 (6th Cir. Sept. 1, 2023) (quoting *Barnes v. Winchell*, 105 F.3d 1111, 1115 (6th Cir. 1997)). "[J]udicial officers should be free to make controversial decisions and act upon their convictions without fear of personal liability." *Cooper*, 203 F.3d at 944 (citing *Stump v. Sparkman*, 435 U.S. 349, 355–56 (1978)); *see also Mireles*, 502 U.S. at 10. Accordingly, "judicial immunity is not overcome by allegations of bad faith or malice, the existence of which ordinarily cannot be resolved without engaging in discovery and eventual trial." *Mireles*, 502 U.S. at 11 (quoting *Pierson v. Ray*, 386 U.S. 547, 554 (1967).

While absolute judicial immunity is generally protective of judicial officers, it does not apply in two circumstances. *Orta*, 2023 LEXIS 23388, at *4 (citing *Mireles*, 502 U.S. at 11–12). First, judicial immunity does not apply to "actions not taken in the judge's judicial capacity." *Mireles*, 502 U.S. at 11. Second, judicial immunity does not apply to "actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Id.* at 12. As the party asserting judicial immunity, Defendant bears the burden of establishing that it exists. *See Leech*, 689 F.3d at 542 (quoting *Brookings*, 389 F.3d at 617). It is not clear from the face of the complaint that Defendant was engaging in a judicial act. Because this complaint can be resolved on these latter grounds, the Court will not address Plaintiff's argument that the action was taken in the complete absence of all jurisdiction.

6

Judicial immunity does not apply to nonjudicial actions, or "actions not taken in the judge's judicial capacity." *Mireles*, 502 U.S. at 11. Courts should consider two factors in determining whether an act is judicial. The first is "the nature of the act itself, *i.e.* whether it is a function normally performed by a judge," and the second is "the expectations of the parties, *i.e.*, whether they dealt with the judge in his judicial capacity." *Stump*, 435 U.S. at 362. In determining whether an act was taken in a judge's judicial capacity, "courts should focus on the nature and function of an act, and not the act itself, when deciding whether certain actions were taken in a judge's judicial capacity." *Cooper*, 203 F.3d at 945.

The quintessential judicial act is deciding a case. The Court of Appeals has "indicated that 'any time an action taken by a judge is not an adjudication between parties, it is less likely that the act is a judicial one.'" *Cameron v. Seitz*, 38 F.3d 264, 271 (6th Cir. 1994) (quoting *Morrison v. Lipscomb*, 877 F.2d 463, 465 (6th Cir. 1989). But "[a] judge acts in his judicial capacity when he exercises control over his courtroom." *Id.* at 272. Contempt "plays an 'integral part of the judicial process' and responds to matters and individuals already before the court." *Orta*, 2023 U.S. App. LEXIS 23388, at *8 (quoting *Johnson v. Turner,* 125 F.3d 324, 335 (6th Cir. 1997). And judicial immunity is not confined to acts in the courtroom; it can include a wide range of actions taken outside the courtroom. *Barrett v. Harrington*, 130 F.3d 246, 260 (6th Cir. 1997) (stating that judicial immunity "is not limited to acts which occur within the confines of the courtroom, and consequently, acts performed outside the courtroom are not, *ipso facto*, non-judicial acts"). Therefore, a judge acts in his judicial capacity when he issues contempt rulings in order to control the proceedings in court, regardless of location.

Plaintiff alleges that Defendant was not controlling a proceeding but rather performing general security, which, she argues, is not a judicial act. (Doc. 29 at 8.) Defendant argues that

his behavior did constitute a judicial act. (Doc. 26 at 6.) Thus, there are two questions before the Court. The first is whether Defendant was controlling his courtroom or performing general courthouse security unrelated to any proceeding. The second is whether issuing a contempt order in the manner implicated here, unrelated to any proceeding, is a judicial function.

### A. It is not clear from the face of the complaint that Defendant issued the contempt order in connection with any past, present, or future proceeding.

Whether Defendant was controlling the proceedings over which he presided—a judicial activity—or engaging in broader courthouse security unrelated to any proceeding—not clearly a judicial activity—is not clear from the face of the complaint. This is because the Complaint does not make clear whether Plaintiff's son, whom she accompanied, was scheduled to appear in front of Defendant or in front of a different judge that day. And it does not make clear that Defendant had been, or was about to be engaged in, any proceeding. However, the court must "draw all reasonable inferences in favor of the plaintiff." *Courtright v. City of Battle* Creek, 839 F.3d 513, 518 (6th Cir. 2016). The Complaint alleges that Plaintiff and her son "had entered the second floor of the Meigs County Courthouse to conduct lawful, private business," and that Plaintiff, at the time of the incident, had not been a litigant before Defendant. (Doc. 1 ¶¶ 14, 16.) Indeed, it is unclear whether Plaintiff or her son ever entered a courtroom on February 8, 2024, when Plaintiff was arrested for contempt of court. (*Id.* ¶ 56.)

And more importantly, Plaintiff explains in her briefing that "although Plaintiff and her son believed they were late, they were neither on the court's docket nor tied to any scheduled judicial proceeding that day." (Doc. 29 at 4.) Therefore, Defendant has not shown that it is obvious, from the face of the complaint, that Defendant was controlling the proceedings before him rather than engaging in general courthouse security. The facts, taken in the light most favorable to Plaintiff, indicate that although Plaintiff was accompanying her son to attend a

8

hearing, no hearing took place or was on the docket (even if Plaintiff thought there was a hearing), and therefore no proceedings took place or were scheduled to take place that could be connected to the contempt order. Whether there was a proceeding is contested by Plaintiff and certainly not clear from the face of the complaint, and the validity of the affirmative defense depends on this fact being evident from the face of the complaint. *See Crawford*, 15 F.4th at 763.

### B. Ordering arrests unrelated to any proceeding are not judicial acts.

The face of the complaint shows that Defendant was, at minimum, issuing a contempt order in the courthouse akin to a security officer. If performing courthouse security unrelated to an ongoing proceeding is a judicial act, then the affirmative defense of judicial immunity would still apply. Therefore, the Court must also determine whether this constitutes a judicial act. "Performance of courthouse security… is not clearly deserving of judicial immunity." *Sullivan*, 2023 U.S. Dist. LEXIS 191877, at *14. The Court of Appeals, when faced with this inquiry, "found the question a 'close' one and ultimately did not decide it." *Id.* (citing *McPherson v. Kelsey,* 125 F.3d 989, 993 (6th Cir. 1997). To analyze this issue, the Court will look to the nature of the act and the expectations of the parties. *See Stump*, 435 U.S. at 362.

#### 1. The nature of the act

First, the Court examines whether the act in question is "a function normally performed by a judge." *Morgan v. Bd. of Prof'l Resp. of the Sup. Ct. of Tenn.*, 63 F.4th 510, 519 (6th Cir. 2023) (quoting *Stump*, 435 U.S. at 362). The Court of Appeals warns district courts that it is a "crucial mistake" to "conflate[] official acts of judges into judicial acts." *Id.* (quoting *Guercio v. Brody*, 814 F.2d 1115, 1117 (6th Cir. 1987)). "[t]he key inquiry here is not into the particulars of Defendant's behavior and whether or not it comported with the law; rather, the Court must consider

9

whether the general nature and function of the act are acceptable." *Marchant v. Moore*, No. 3:09-cv-1218, 2010 U.S. Dist. LEXIS 102622, at *13 (M.D. Tenn. Sept. 28, 2010).

"A judge acts in his judicial capacity when he exercises control over his courtroom." *Cameron*, 38 F. 3d at 271 (6th Cir. 1994).[3] This principle has been construed to apply broadly. Courts have granted immunity for behavior even tenuously connected to a judicial proceeding, such as situations in which judges have ordered spectators to take drug tests in a hearing over which they presided, *see Marchant*, 2010 U.S. Dist. LEXIS 102622, at *14, or immediately after presiding over a hearing, *see Ashbrook v. Meigs Cnty.*, No. 1:24-cv-165, 2025 U.S. Dist LEXIS 31371, at *16–17 (E.D. Tenn. Feb. 21, 2025). Contempt rulings in those scenarios are acts normally performed by a judge. This is because controlling a proceeding sometimes requires control of individuals outside a courtroom, or control of individuals who have no connection with the proceeding but mere proximity to it. It also sometimes requires contempt rulings temporally distinct from the proceeding itself, such as issuing contempt determinations before or after the proceeding.

But this case presents a different question: what happens when the contempt action is taken with no connection to any proceeding? The case law, to be sure, has emphasized the "inherently judicial" nature of contempt. *Jackson v. Bachman*, No. 1:19-cv-422, 2021 U.S. Dist. LEXIS 103125, at *17 (S. D. Ohio June 2, 2021). But contempt "plays an 'integral part of the judicial process' and responds to matters and individuals already before the court." *Orta,* 2023 U.S. App. LEXIS 23388, at *8. Therefore, it is "important to consider whether the 'confrontation arose

---

[3] The Court of Appeals, to support this assertion, quoted the Supreme Court's pronouncement in *Sheppard v. Maxwell*, 384 U.S. 333, 358 (1966) that "the courtroom and courthouse premises are subject to the control of the court." But the Court of Appeals later did not take this citation to be decisive on the issue of whether courthouse security is a judicial act, given its acknowledgment that it would not decide the question. *See McPherson,* 125 F.3d 989.

directly and immediately out of a visit to the judge in his official capacity.'" *Ashbrook*, 2025 U.S. Dist. LEXIS 31371, at *18 (quoting *Stump,* 435 U.S. at 361).

When individuals are not before a court, are not scheduled to be before the court, and have not been before the court, the contempt power is no longer tied to a judicial proceeding. The Court of Appeals has distinguished between judicial and non-judicial actions partly on the basis of whether the act was tied to any proceeding. The Court of Appeals in *Barnes v. Winchell* noted that acts are not judicial when the judges "initiated charges not as a result of a case brought before them by the parties, but as a result of events in their private, nonjudicial lives, events in which they had a personal stake." 105 F.3d at 1118. The same sort of act is judicial when it arises "out of judicial proceedings brought before [a judge] by independent parties." *Id.* The Court of Appeals summarized the doctrine as follows:

> [D]espite its breadth, the doctrine of absolute judicial immunity does not protect a judge performing the purely prosecutorial functions involved in initiating criminal prosecutions. This is especially true where the judge initiates criminal prosecutions based on the judge's private interests, completely separate from cases brought to court independently by the parties. Nonetheless, this exception to absolute judicial immunity when a judge engages in purely prosecutorial functions is narrow.

*Id.* The Court of Appeals went on to emphasize, though, that "even if a judge encroaches upon prosecutorial functions, the broad shield of absolute judicial immunity is not automatically overcome. . . [A] judge can still be acting in a judicial capacity for immunity purposes when undertaking seemingly prosecutorial functions in a case brought before the judge independently by the parties." *Id.* The emphasis on acting in the context of cases brought by independent parties is important, because it suggests acts brought by judges unrelated to any proceeding are not judicial. The Court of Appeals has also made clear that, at times, a judge's use of the civil contempt power can be prosecutorial, although this is a narrow exception. *See Sevier v. Turner*, 742 F.2d

11

Case 1:24-cv-00312-CLC-MJD   Document 31   Filed 12/12/25   Page 11 of 14
PageID #: 299

262, 272 (6th Cir. 1984) (finding that a judge's use of the civil contempt power to initiate proceedings against absent fathers constituted a prosecutorial and not a judicial act).

While Defendant issued a contempt order that bears Docket No. 23-OP-1626, Plaintiff represents that there was no hearing in that case scheduled for that day.[4] (Doc. 29 at 4.) Taking all facts in the light most favorable to the plaintiff, there was no ongoing proceeding, neither Plaintiff nor her son had been in Defendant's courtroom that day, and neither were scheduled to be in Defendant's courtroom that day. This fact is critical to this analysis; affording Defendant judicial immunity would deputize any judge to arrest anyone merely standing in a courthouse, an outcome explicitly rejected by the Sixth Circuit. *See Orta*, 2023 U.S. App. LEXIS 23388, at \*5. Furthermore, Plaintiff alleges in its complaint that Defendant acted "out of personal animus." (Doc. 1 ¶ 79.) Such an allegation is the sort that the *Barnes* Court determined that, when combined with a situation where there was no ongoing proceeding or hearing, would not cloak the judge with judicial immunity. 105 F.3d at 1118. Therefore, taking the complaint's allegations as true, Defendant, out of personal animus, arrested a bystander of a party who was not scheduled to be before him not in connection with any proceeding.[5] Such an action is not judicial in nature.

### 2. The expectations of the parties

Second, the Court must examine the expectations of the parties. This question asks "whether or not [the party interacting with the judge] expected to deal with the judge in her official

---

[4] Plaintiff also alleges that the case does not "refer or relate to Plaintiff." (Doc. 1 ¶ 58.) This allegation is not determinative, though, because she could be held in contempt as a bystander if she accompanied her son to the proceeding. The crux of this case is whether there was any proceeding held or actually scheduled

[5] The Court recognizes that the contempt order was attached to a docket number. (Doc. 1 ¶ 60). But whether it is attached to a docket number is immaterial; the question is whether there was a proceeding in the case.

capacity." *Marchant*, 2010 U.S. Dist. LEXIS 102622, at *13. The Court of Appeals has found that "by entering a courtroom to watch judicial proceedings … [the plaintiff] understood that she would be dealing with [the judge] in his judicial capacity, as opposed to encountering him elsewhere in the courthouse while on a personal errand. *Orta*, 2023 U.S. App. LEXIS 23388, at *5.

Here, Plaintiff accompanied her son to a hearing for a matter in which he was a named party. (Doc. 1 ¶ 22.) She had never been, and was not, a litigant before Defendant (*Id.* ¶ 16), although her son had previously been. (*Id.* ¶ 59.) Therefore, she and her son, at least upon arrival in the courthouse, actually expected to be before a judge, in some courtroom, at some point in the day. But it is unclear before which judge her son was scheduled to appear, and Plaintiff represents that they were "neither on the court's docket nor tied to any scheduled judicial proceeding that day," which the Court interprets to mean that they arrived for a hearing, but there was no hearing in fact scheduled to occur. (Doc. 29 at 4.)

Resolving all inferences in favor of the Plaintiff, as the Court must do at the motion to dismiss stage, no proceeding before Defendant had started or was scheduled to start that day. (*Id.*) Simply expecting to go to any hearing, before any judge, in a courthouse that hosts a wide variety of hearings, does not mean that a litigant expects to interact with a particular judge or be subject to his or her contempt powers. This is particularly true when there is no proceeding actually scheduled. While they may expect to be confronted by a security officer and subject to their powers, that is a different expectation than that of being confronted by a judge. This case presents a situation much closer to a judge accosting a bystander who never entered a courtroom to watch or participate in judicial proceedings. *Cf. Orta*, 2023 U.S. App. LEXIS 23388, at *5.

Therefore, Plaintiff and her son likely did not expect to interact with a judge merely by stepping foot in the courthouse. To say that any person who enters a courthouse and may be before any judge anticipates being subject to contempt powers the moment he or she passes through the gates of the courthouse would be a dangerously expansive reading of immunity. Courthouses contain a myriad of functions outside of hearings; people work at courthouses, go to the physical courthouses to get driver's licenses and licenses plates, attend meetings or pay visits to people, and attend ceremonies. Such an outcome would subject any bystander to contempt orders the moment they enter a courthouse for any business, a scenario expressly disavowed by *Orta*. *Id.*

Taking the facts as the Complaint presents them in the light most favorable to Plaintiff, there was no expectation of interacting with Defendant and no hearing either ongoing or scheduled to commence.

### IV. <u>CONCLUSION</u>

For the foregoing reasons, the Court will **DENY** Defendant's motion to dismiss Defendant on the grounds of judicial immunity.

**AN APPROPRIATE ORDER WILL ENTER.**

**ENTER.**

/s/_____
**CURTIS L. COLLIER**
**UNITED STATES DISTRICT JUDGE**